UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Webb Candy, Inc. and<br>Licensed Sports Marketing, LLC,<br><br>　　　　　Plaintiffs,<br><br>v.<br><br>Walmart Stores, Inc.,<br><br>　　　　　Defendant. | Case No.: 09-CV-02056-PJS-JJK<br><br>PLAINTIFFS' MEMORANDUM IN RESPONSE TO DEFENDANT'S MOTION TO DISMISS, OR, IN THE ALTERNATIVE, TO TRANSFER VENUE |

Walmart appears to take the position it should not have to pay for $600,000 worth of product it got from Plaintiffs because it had no vendor supplier agreement, but that it should get venue changed to its hometown because it had a vendor supplier agreement.

**I.　There is No Admissible Evidence of a Contract between Plaintiffs and Defendant with a Forum Selection Clause.**

　　a.　<u>The statements in the Declaration of Rosalynn Mitchell are inadmissible</u>.

The Declaration of Rosalynn Mitchell (doc. #9) is inadmissible in that it is not the best evidence of the facts it purports to prove and is inadmissible under Rule 1002, Rule 1003, and Rule 1004 of the Federal Rules of Evidence.

The Declaration is offered to prove the existence of a forum selection clause in a contract between Defendant and Plaintiffs, but neither the original contract nor any copies of it were provided.

1

Defendant's entire motion is based upon the premise that it has a contract with the Plaintiffs that was freely entered into which is valid and enforceable and which contains a valid and enforceable forum selection clause.

Defendant has failed, however, to provide even a copy, let alone the original of the complete contract it claims governs the parties' relationship. Instead, Defendant provided a Declaration of Walmart's in-house counsel purporting to recite language from "a written supplier Agreement between Licensed Sports Marketing, LLC ("LSM") and Walmart" (doc. #9). The Declarant states "I have reviewed the LSM Supplier Agreement"[1] and then purports to describe its contents (doc. #9).

The Declaration fails to identify the contract and the contract has not been produced. The actual document may very well have expired by its terms, or have a myriad of other clauses that make it inapplicable to these proceedings.

Although it is hard to imagine that an attorney in good faith would sign a declaration "about" a contract knowing it had expired without disclosing that fact, there may be other clauses that relate to the enforceability of the contract or limit its application.

Rule 1002 of the Federal Rules of Evidence (which governs in these proceedings pursuant to Rule 101 §1(01)) states:

> <u>To prove the content of a writing</u>, recording, or photograph, <u>the original writing</u>, recording, or photograph <u>is required</u>, except as otherwise provided in these rules or by Act of Congress.

---

[1] Identical language is used to testify to the existence of a second contract with a "Little i Supplier Agreement" that is not even a party to these proceedings.

(emphasis added).

Rule 1003 allows admission of a duplicate under certain circumstance and Rule 1006 provides for summaries of voluminous writings "which cannot conveniently be examined in court" but then the originals have to be made available to the other party for examination (Rule 1006). Nowhere, however, do the Federal Rules allow a party to attempt to prove up a binding contract on the other party to the litigation in the fashion Defendant seeks to do in this case.

If parties could have their attorney select a paragraph out of a contract and then simply sign an affidavit that the contract contains a clause that the other party is bound by without producing the contract, the opportunity for fraud upon the court and the other party is tremendous. The contract may be between different parties than are in the litigation, it may have expired by its own terms, it may be limited to certain kinds of transactions and not cover others, or any one of many other possibilities.

In this case, Defendant's entire motion rests on the enforceability of a contract it claims exists between one of the parties and then it seeks to expand this invisible contract to cover the other Plaintiff. It would be a gross injustice to grant relief under such a contract without the Court or the opponent even getting to see it.

b. <u>Defendant fails to treat the facts alleged as true and draws inferences in its favor</u>.

Defendant acknowledges that it is obligated to treat the facts alleged in the complaint as true (ECF doc. 8, p. 2, footnote 1) and to draw all inferences in Plaintiffs'

3

favor. Instead, it asserts alleged facts that are not in the complaint or are inconsistent with it, and draws all inferences in its favor.

It infers that Plaintiffs "circumvented Walmart's policies" and states "Webb Candy concedes in the complaint it devised a scheme . . . to effectuate sales to Walmart." The memorandum states "Plaintiffs continued to sell unauthorized products to individual stores." None of these facts are true or alleged.

These are inferences Walmart hopes the Court (or jury) will ultimately draw in the case, but they are not allegations contained in the complaint.

There is nothing in the complaint that says Webb Candy, Inc. ("Webb Candy") entered into written contracts with Walmart wherein it freely agreed to a forum selection clause, for example. The complaint asserts Webb Candy, in relying on what it was told by a Walmart store manager in Apple Valley, Minnesota, did what it was told to do to sell to individual Walmart stores.

Webb Candy was told it could sell to individual stores without going through Walmart's corporate office, but that a vendor identification number was needed before any sales could be made. Complaint (attached to Notice of Removal), doc. #1, ¶¶ 7 and 8.

These facts are to be assumed to be true. There is no allegation by Plaintiff that it was engaged in some type of illicit scheme as Walmart asserts.

There is no allegation Webb Candy was ever told it needed a written contract with Walmart or that it would need to sign one, and there is no allegation it ever did. It was told it needed a "vendor i.d. number."

4

"Vendor i.d. numbers" could conceivably be granted for a myriad of reasons. It could be so Walmart could distinguish between vendors with similar names or it could be to help it with bookkeeping issues, or for any number of other reasons.

The complaint asserts Webb Candy entered into an arrangement with Little i, Inc. which had a vendor i.d. number for the reasons set forth in the complaint, but it never states that Webb Candy or LSM entered into a written supplier agreement with Walmart.

Instead, in paragraph 12, the complaint expressly states Webb Candy told Seth Malley, the Walmart buyer, of its contract with Little i and "requested Mr. Malley's help in securing a separate vendor identification number . . . but Mr. Malley never responded."

If entrance into a supplier contract is how one gets a supplier vendor i.d. number (which is not alleged) and it is this contract that contains a forum selection clause, the complaint infers Plaintiff Webb Candy did <u>not</u> enter into such a contract because Walmart never responded.

Walmart (relying entirely on the inadmissible statements in the Declaration of Rosalyn Mitchell) alleges that Webb Candy is bound by a valid enforceable contract Walmart had with Licensed Sports Marketing, Inc. and appears to argue all the orders Walmart Stores placed with Webb Candy that are not paid for were governed by that contract.

Again, it ignores paragraph 16 of the complaint which says in February 2009 Walmart issued payment <u>directly</u> to Webb Candy for the product. (There is no allegation all product that Webb Candy and Little i shipped has been paid for as Walmart asserts in footnote 3, p. 4, doc. 8).

5

The complaint sets forth facts that establish that the stores ordered directly from Webb Candy for the reasons set forth in the complaint. Webb Candy believed the stores had authority, asserts it was paid for many orders but never asserts Webb Candy signed a contract with Walmart or that the orders were governed by a contract Webb Candy has never seen.

Walmart is obligated at this stage to accept the allegations of Count I, paragraphs 22 – 25 as fact. Those facts establish agreements with many Walmart stores, but no written contract with a forum selection clause.

If the fact-finder finds from the facts alleged in the complaint that there never was a contract between Walmart and Webb Candy, then Webb Candy asserts it has unjustly enriched Walmart in that it supplied over $600,000 worth of product to Walmart which Walmart induced it to supply. It is unjust for Walmart to be enriched by events described in the complaint at ¶¶ 1 – 27, if this Court assumes no contract is found to exist.

Without an allegation of a written contract with a forum selection clause, and with no admissible evidence of a contract which Webb Candy entered into or which LSM, Inc. was bound by, there is no basis upon which Walmart's motion can be granted.

All of Walmart's remaining arguments on venue rely on the inadmissible statements in the Declaration of Rosalyn Mitchell about a contract, but which it conveniently omits production of.

**II.     Without an Enforceable Contract with an Enforceable Forum Selection Clause, There is no Basis to Change Venue.**

Plaintiffs selected Minnesota state court as its forum and Defendant removed the case to Federal District Court in Minnesota.  Plaintiffs' selection of forum was reasonable and appropriate.  Plaintiffs are located in Minnesota and at least eight of Webb Candy's employees had conversations or would know facts that establish that Plaintiff entered into agreements with over 900 individual Walmart stores to supply them with specialty products.  (Affidavit of Alan Webb).

In addition, an employee of the Apple Valley, Minnesota Walmart told Plaintiff how to proceed to sell to individual stores.  (Complaint, ¶¶ 8, 9).  Plaintiffs Webb Candy, Inc., and LSM, Inc., are both Minnesota companies.

Defendant argues in the alternative that if there is no forum selection clause in a contract that Plaintiff is a party to, venue should be transferred to Arkansas pursuant to 28 U.S.C. §1440 (a).  (Doc. 8, p. 8).

Defendant argues that (1) convenience of the parties; (2) the witnesses; and (3) the interests of justice mandate such a change.

Defendant cannot in good faith argue that in fact it would be more convenient for the parties to litigate in Arkansas, so it again relies entirely on its argument that there is a governing forum selection clause (doc. 8, p. 9).  In fact, nearly every witness likely to testify at trial is from Minnesota.  (See Affidavit of Alan Webb).  At least eight employees of Webb Candy likely have knowledge of relevant facts, as does the Apple Valley store manager.  Other possible witnesses include employees of LSM – a Minnesota company.

Indeed, Plaintiff sold to over 900 individual stores, but the contacts were made by Minneapolis-based personnel. (Affidavit of Alan Webb).

There is no evidence to indicate that any state other than Minnesota has anywhere near as many witnesses. Arkansas surely does not. Both the convenience of the parties and the witnesses supports venue in Minnesota. The first two factors heavily favor Minnesota.

The third factor courts rely on, "The interest of justice," heavily favors Minnesota. All parties are available for trial here in Minnesota and Plaintiffs reasonably chose it as the forum. The Plaintiffs' choice of forum is a factor the court is to accord weight to. Terra Int'l., Inc. Minnisssippi Chemical Corp., 119 F. 3d 688, 691 (8th Cir. 1997).

The comparative cost of the litigation in each forum markedly favors Minnesota. Plaintiffs' witnesses are in Minnesota. It would cost many thousand of dollars for Plaintiffs to fly eight employees to Arkansas and provide lodging for them or depose them here to obtain their testimony for use at trial if they could not simply attend trial in Minnesota.

Defendant's entire argument for judicial economy again relies entirely on a valid and enforceable forum selection clause. There is no admissible evidence of such a clause and even if there were for LSM, Webb Candy never signed any such agreement. There is no evidence two trials would be needed if Defendant's motion was denied. All claims can be tried in Minnesota.

Similarly, there is no reason to apply Arkansas law without a supplier agreement that requires it and there is no evidence of any agreement requiring it in the record.

8

Based on the foregoing, Plaintiffs ask that Defendant's motion be in all respect denied.

Respectfully submitted,

**WATJE & MOORE, LTD**

Dated: September 25, 2009.　　　　　　　　　/s/ Galen E. Watje
GALEN E. WATJE (#114790)
STEVEN MOORE (#252463)
7900 Xerxes Avenue South, Suite 2000
Bloomington, Minnesota 55431
Telephone:　(952) 646-9991
Facsimile:　(952) 646-9993
***Attorneys for Plaintiffs***