## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

Webb Candy, Inc. and
Licensed Sports Marketing, LLC,

                    Plaintiffs,

vs.

Wal-Mart Stores, Inc.,

                    Defendant.

Court File No. 09-cv-2056 PJS/JJK

**DEFENDANT WAL-MART STORES,
INC.'S SUPPLEMENTAL BRIEF IN
SUPPORT OF MOTION TO DISMISS
OR, IN THE ALTERNATIVE, TO
TRANSFER VENUE**

## <u>INTRODUCTION</u>

Defendant Wal-Mart Stores, Inc. ("Walmart") submits this supplemental brief as

ordered by the Court at the hearing on Walmart's Motion to Dismiss or, in the

Alternative, to Transfer Venue.  (Order (Docket No. 19).)

The terms of the Supplier Agreement between LSM and Walmart, including the

forum selection clause, remained in force after the stated expiration date because the

parties continued to perform the Supplier Agreement.  It is not more complicated than

that.  The UCC and the common law have rules permitting the enforcement of provisions

in contracts, like the forum selection clause at issue here, when parties continue to

perform the contracts after the stated expiration date.  These include waiver (of the

expiration term) and the principle that when parties continue to perform an expired

contract without repudiating the old terms or assenting to different terms, they create a

new contract on the same terms and conditions as the old.  Pursuant to these legal

principles, either the Supplier Agreement never expired because the termination

Dockets.Justia.com

provision was waived, or a new agreement was created on the same terms as the original Supplier Agreement.  Either way, the terms and conditions of the Supplier Agreement, including the forum selection clause, govern this dispute.  This case may be litigated only in Arkansas and Defendant's motion to dismiss or transfer should be granted.

## ARGUMENT

I.  **THE PARTIES WAIVED THE ONE-YEAR "TERM OF AGREEMENT" PROVISION IN THE SUPPLIER AGREEMENT BY CONTINUING TO DO BUSINESS AFTER THE EXPIRATION DATE.**

   A.  **Under the Uniform Commercial Code, the Parties' Course of Performance May Waive Inconsistent Provisions in a Written Agreement.**

Plaintiffs have alleged that Walmart did not pay for merchandise supplied to Walmart through LSM.  (Complaint (Docket No. 1-1) ¶¶ 13, 16, 18, 21.)  Because sales of goods are at issue, Plaintiffs' claims are governed by Article 2 of the Uniform Commercial Code (UCC).  Ark. Code Ann. § 4-2-102; Minn. Stat. § 336.2-102.[1]

Under the UCC, parties' course of performance may waive any inconsistent term in a written contract.  Ark. Code Ann. § 4-1-303(f); Minn. Stat. § 336.1-303(f) ("Subject to section [2-209], a course of performance is relevant to show a waiver or modification of *any term* inconsistent with the course of performance") (emphasis added).  "Course of performance" is defined as:

---

[1] The Supplier Agreement states that Plaintiffs' dispute with Walmart is governed by Arkansas law.  (Supp. Decl. of R. Mitchell (Docket No. 17), Ex. A, ¶ 24.)  While Arkansas law should therefore govern these issues, this Court need not reach the choice of law issue because there is no significant difference between Arkansas and Minnesota law on these issues.

a sequence of conduct between the parties to a particular transaction that exists if:

(1) the agreement of the parties with respect to the transaction involves repeated occasions for performance by a party; and

(2) the other party, with knowledge of the nature of the performance and opportunity for objection to it, accepts the performance or acquiesces in it without objection.

Ark. Code Ann. § 4-1-303(a); Minn. Stat. § 336.1-303(a).  Waiver can occur by conduct or an oral agreement *even if the underlying contract requires all modifications to be in writing*.  Ark. Code Ann. § 4-2-209(4); Minn. Stat. § 336.2-209(4) ("Although an attempt at modification or rescission does not satisfy the requirements of subsection (2) . . . [which states that a contract can exclude modifications that are not made by a signed writing] it *can* operate as a *waiver*").  (Emphasis added.)  Both Arkansas and Minnesota define waiver as an intentional, voluntary relinquishment of a known right.  *Bio-tech Pharmacal, Inc. v. Int'l Bus. Connections, LLC*, 184 S.W.3d 447, 452 (Ark. Ct. App. 2004) (upholding trial court's finding that party waived a contract's requirement that purchase orders be confirmed in writing where party accepted confirmation by telephone for several orders).  "Minnesota courts thus look to party conduct to determine whether it is reasonable to conclude, based on the conduct of the other party, that a provision of the contract has been waived." *Nutrisoya Foods, Inc. v. Sunrich, LLC*, 626 F. Supp.2d 985, 990-91 (D. Minn. 2009).

**B.      The Parties Have Waived the "Term of Agreement" Provision By Their Course of Performance.**

The elements of waiver by course of performance under UCC § 1-303(f) are met in this case.  The Supplier Agreement between LSM and Walmart has an effective date of December 21, 2005, and a one-year term.  (Supp. Decl. of R. Mitchell (Docket No. 17), Ex. A, p. 1, ¶ 27.)  The first element of course of performance waiver is met because the Supplier Agreement contemplates that the parties will have multiple, repeated occasions for performance under the Agreement.  The Agreement provides "[t]he parties agree that *all* sales and deliveries of *all* Merchandise . . . by Supplier to Company and *all* Orders . . . will be covered by and subject to the terms of this Agreement."  (*Id.*, p. 1.) (Emphasis added.)  In addition, Plaintiffs have alleged that Walmart continued to place orders with LSM after the stated termination date of the Agreement on December 21, 2006. (Complaint ¶¶ 13, 16, 18, 21.)  The second element of waiver by course of performance is met because Plaintiffs, with knowledge of the termination date of the Agreement and the opportunity to object, accepted the performance by accepting the orders as timely and continuing to ship product to Walmart, all without objection.

The Supplier Agreement in this case is the document governing <u>all</u> orders and sales of merchandise.  The parties to the Supplier Agreement, LSM and Walmart, continued to perform even after the term of the Agreement expired.  Under the UCC, these actions can, and do, constitute a waiver by the parties of the Term of Agreement provision because that term is inconsistent with the intent of the parties as demonstrated by their course of performance.  Any anti-modification language in the Agreement does

- 4 -

not change that result because it, too, has been waived.  UCC § 2-209(4).  *See* 1 White &
Summers, *Uniform Commercial Code* (5th Ed.) § 1-7.  Consequently, the Supplier
Agreement still governs the alleged orders at issue and Plaintiffs' claims are subject to
the forum selection clause that requires this case to be litigated in Arkansas.

**II.    THE PARTIES NEVER AGREED TO ANY NEW OR DIFFERENT
       TERMS AND THUS THE TERMS IN THE SUPPLIER AGREEMENT
       CONTINUED TO GOVERN THEIR BUSINESS RELATIONSHIP.**

**A.    Under the UCC and Common Law, the Parties' Course of Dealing Is
       Used to Interpret Contracts between the Parties.**

Under the UCC, the parties' "course of dealing" is defined as: "a sequence of
conduct concerning previous transactions between the parties to a particular transaction
that is fairly to be regarded as establishing a common basis of understanding for
interpreting their expressions and other conduct."  Ark. Code Ann. § 4-1-303(b); Minn.
Stat. § 336.1-303(b).  The course of dealing between the parties "is relevant in
ascertaining the meaning of the parties' agreement."  Ark. Code Ann. § 4-1-303(d);
Minn. Stat. § 336.1-303(d); *see Bio-tech Pharmacal*, 184 S.W.3d at 451 (finding that the
previous transactions between the parties made it "reasonable to infer" that a disputed
purchase order served as an acceptance rather than an offer); *Oskey Gasoline & Oil Co. v.
OKC Ref. Inc.*, 364 F. Supp. 1137, 1141-42 (D. Minn. 1973) (the fact that the parties had
always dealt with each other on the basis of "gross gallons" as opposed to "net gallons"
interpreted a subsequent written contract which did not indicate whether future
transactions would be on the basis of "gross gallons" or "net gallons").

Similarly, under the common law, after a contract expires, continued performance by the parties implies that they have mutually agreed to a new or continued contract containing the same provisions as the old. "When an agreement expires by its own terms, if without more the parties continue to perform as before, an implication arises that they have mutually assented to a new contract containing the same provisions as the old, and the existence of the new contract is determined by an 'objective' test, i.e., whether a reasonable man would think, from the actions, that they intended to make a new binding agreement." *Steed v. Busby*, 593 S.W.2d 34, 38 (Ark. 1980) (upholding judgment that lessee had agreed to repair or replace a well for a sublessee based on terms of previous subleases between the parties); *see Bolander v. Bolander*, 703 N.W.2d 529, 535-36, 542 (Minn. Ct. App. 2005) (upholding verdict that employment contract had been extended by conduct of the parties). This is the case here.

**B.      The Parties Continued Their Performance Manifesting Their Mutual Intent to Continue Their Contractual Relationship.**

As discussed above, the parties specifically agreed at the outset of their relationship that the Supplier Agreement would establish "the general terms of the *business relationship*" between the parties, and would govern "*all* sales and deliveries of *all* Merchandise . . . by Supplier to Company and *all* Orders . . .." (Supp. Decl. of R. Mitchell, Ex. A, p. 1.) (Emphasis added.) All transactions that occurred between the parties prior to December 21, 2006 were governed by the terms of the Supplier Agreement. When the parties continued to do business after December 21, 2006, there is no evidence that they chose to establish a different "business relationship" or chose to

have some different terms govern their orders.  They simply continued doing business as usual.  They did not repudiate any terms of their prior agreement or assent to new terms. In the absence of evidence that the parties agreed to some different terms for their business relationship, the inference that they continued to do business under the same terms as they always did is inescapable.  Among those terms is the forum selection clause requiring Plaintiffs' claims to be litigated in Arkansas.

## <u>CONCLUSION</u>

The parties agreed at the outset that their business relationship would be governed by the terms of their Supplier Agreement, and that *all* sales and *all* orders would be governed by the terms of that Supplier Agreement, including its forum selection clause.  The course of the parties' performance of their agreement extended beyond the stated termination date of the Supplier Agreement.  By continuing their performance without repudiating any of the terms of the Agreement other than the expiration date, the parties demonstrated their intent to continue their relationship, thereby either waiving the expiration provision or make a new relationship based on the same terms.  Walmart respectfully requests that the Court grant its motion to dismiss or transfer venue.

Dated:  October 30, 2009

 s/ Richard D. Snyder
Richard D. Snyder (#191292)
Sarah C.S. McLaren (#0345878)
FREDRIKSON & BYRON, P.A.
200 South Sixth Street, Suite 4000
Minneapolis, MN 55402-1425
Telephone:  (612) 492-7000
Facsimile:  (612) 492-7077

ATTORNEYS FOR DEFENDANT
WAL-MART STORES, INC.

4642388_2.DOC