# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

WEBB CANDY, INC., and LICENSED
SPORTS MARKETING, LLC,

Case No. 09-CV-2056 (PJS/JJK)

Plaintiffs,

ORDER

v.

WALMART STORES, INC.,

Defendant.

---

Steven C. Moore and Galen E. Watje, WATJE & MOORE, LTD, for plaintiffs.

Richard D. Snyder and Sarah C. S. McLaren, FREDRICKSON & BYRON, PA, for defendant.

Plaintiffs Webb Candy, Inc. ("Webb Candy") and Licensed Sports Marketing, LLC ("LSM") bring this action against defendant Walmart Stores, Inc. ("Walmart"), alleging that they were not paid for merchandise that they supplied to Walmart stores. Walmart moves to dismiss this lawsuit — or, in the alternative, to transfer this lawsuit to Arkansas — on the basis of a forum-selection clause in a contract between Walmart and LSM. Walmart also moves (again in the alternative) to transfer this action to Arkansas pursuant to 28 U.S.C. § 1404(a). For the reasons that follow, Walmart's motions are denied.

# I.  BACKGROUND[1]

## A.  Webb Candy's Business

Webb Candy is a Minnesota wholesaler that specializes in distributing products that bear the names and logos of high schools and colleges.  Walmart is an Arkansas retailer that operates hundreds of stores in the United States.  In the fall of 2008, Webb Candy approached the manager of a Walmart store in Minnesota about selling Webb Candy's products at that location.  The manager informed Webb Candy that, if Webb Candy obtained a vendor-identification number from Walmart, individual stores could order products directly from Webb Candy, eliminating the need for Webb Candy to go through Walmart's corporate office in Arkansas.  The procedure by which individual stores can order products directly from wholesalers is known within Walmart as the "70-type" ordering process.

Webb Candy learned that some companies who have obtained vendor-identification numbers from Walmart will in effect lease the use of their numbers to third parties in return for a fee.  Webb Candy entered into such an arrangement with Little i, Inc. ("Little i") in the fall of 2008.  Pursuant to that arrangement, Webb Candy marketed and shipped its products directly to individual Walmart stores using the 70-type ordering process and then invoiced Walmart using Little i's name and vendor-identification number.  Walmart issued payments to Little i, and Little i apparently forwarded the payments to Webb Candy.  In return, Webb Candy presumably paid a fee to Little i.

---

[1]The relevant facts are largely undisputed.  To the extent that they are disputed, the Court resolves the dispute in favor of plaintiffs, as explained below.

On November 4, 2008, Webb Candy contacted Seth Malley, a buyer at Walmart's corporate headquarters, and informed him of its arrangement with Little i. Webb Candy asked Malley for help in securing its own vendor-identification number from Walmart so that it would not have to pay Little i to use its number. Malley did not respond.

On November 25, 2008, Webb Candy discontinued its arrangement with Little i and embarked on a joint venture with LSM, a company that (like Little i) had a Walmart vendor-identification number. Compl. at ¶ 13. Pursuant to this joint venture, Webb Candy marketed and sold both its products and LSM's products directly to Walmart stores using the 70-type ordering process. Sales of both companies' products were invoiced using LSM's vendor-identification number. Walmart made payments to LSM, and LSM apparently forwarded part of the payments to Webb Candy.

On January 20, 2009, Webb Candy informed Malley that it was now selling products directly to Walmart stores under LSM's vendor-identification number and that it was in the process of acquiring LSM's assets. As of that date, Webb Candy had already delivered over $1.25 million of its products directly to individual Walmart stores. Walmart issued payment for at least one shipment of products directly to Webb Candy rather than LSM. Complaint at ¶ 16.

In February 2009, Walmart informed Webb Candy that individual stores were not authorized to order merchandise from Webb Candy because the company did not have its own vendor-identification number. Individual Walmart stores nevertheless continued to order items directly from Webb Candy until March 2009, when Walmart informed Webb Candy that its stores would no longer carry Webb Candy merchandise. Walmart promised to return all unsold merchandise to Webb Candy. According to plaintiffs, however, Walmart has neither returned the

unsold merchandise nor paid for it. Plaintiffs contend that they are owed over $600,000 for

merchandise delivered to individual stores and not returned by Walmart. At oral argument,

Webb Candy clarified that it is owed money both for products delivered during the arrangement

with Little i and for products delivered during the joint venture with LSM.

Webb Candy and LSM sued Walmart in Minnesota state court, asserting claims for

breach of contract, unjust enrichment, and violations of the Uniform Commercial Code ("UCC").

Walmart removed the action to federal court. Citing a forum-selection clause in its contracts

with Little i and LSM, Walmart now asks this Court either to dismiss this action or to transfer it

to Arkansas. Walmart also contends that a transfer to Arkansas is warranted "[f]or the

convenience of parties and witnesses" and "in the interest of justice" under 28 U.S.C. § 1404(a).

### B. Walmart's Contracts with Little i and LSM

Walmart never entered into a written contract with Webb Candy. Walmart did, however,

enter into separate written contracts — known as the "Supplier Agreements" — with Little i and

LSM.[2] The opening paragraph of the Supplier Agreement provides that "all sales and deliveries

of all Merchandise . . . and all Orders . . . will be covered by and subject to the terms of this

Agreement." Supplier Agreement at 1. The agreement defines "Merchandise" to include all

products or goods delivered to Walmart by Little i or LSM and defines "Order" as "any written

or electronic purchase order issued by [Walmart]." Supplier Agreement at ¶ 1(d) and (h). The

agreement also contains a forum-selection clause, which reads in pertinent part:

---

[2]Except as noted below, the material portions of those agreements are identical. The
Court will generally cite to the "Supplier Agreement" when referring to provisions that appear in
both the Little i and LSM agreements.

> This Agreement, any and all Orders, and any and all disputes
> arising thereunder or relating thereto, whether sounding in contract
> or tort, shall be governed by and construed in accordance with the
> laws of the State of Arkansas . . . and the federal and/or state courts
> of Benton and Washington County, Arkansas, shall have exclusive
> jurisdiction over any actions or suits relating thereto. The parties
> mutually acknowledge and agree that they shall not raise, and
> hereby waive, any defenses based upon venue, inconvenience of
> forum or lack of personal jurisdiction in any action or suit brought
> in accordance with the foregoing.

Supplier Agreement at ¶ 24.

The Supplier Agreement provides that it will expire one year after the "Effective Date" of the contract and that it "may only be renewed or extended by an agreement signed by an authorized officer of" both Walmart and the supplier. Supplier Agreement at ¶ 27. The Effective Date of the Little i contract is July 17, 2006, and the Effective Date of the LSM contract is December 21, 2005. Little i Supplier Agreement at 1; LSM Supplier Agreement at 1. Thus, Walmart's agreement with Little i expired on July 17, 2007, and Walmart's agreement with LSM expired on December 21, 2006. In other words, both Supplier Agreements expired long before Webb Candy delivered any merchandise to any Walmart store. No extension of either the Little i agreement or the LSM agreement was ever signed.

The Supplier Agreement also contains a survival clause, which provides, among other things, that some provisions of the agreement survive the agreement's expiration. Specifically, the survival clause provides:

> The provisions of this Agreement which by their nature are
> intended to survive termination of this Agreement (including but
> not limited to . . . forum selection . . .) shall survive its
> termination . . . .

. . . Any changes in this Agreement shall be in writing and
executed by both parties. . . .

. . . No [Walmart] representative has authority to renew or extend
this Agreement except in a writing signed by an authorized officer
of [Walmart]. . . .

Supplier Agreement at ¶ 29.  The contract also requires that any waiver of contractual terms be
made in writing.  Supplier Agreement at ¶ 23.

Plaintiffs concede that *if* a Supplier Agreement governs Webb Candy's delivery of
merchandise to Walmart stores, then plaintiffs must sue Walmart in Arkansas pursuant to the
forum-selection clause.  Plaintiffs contend, however, that the Supplier Agreement does not apply
to the transactions that are the subject of this lawsuit.  Plaintiffs point out that Webb Candy never
signed a Supplier Agreement and that the Supplier Agreements signed by Little i and LSM
expired long before Webb Candy delivered any merchandise to any Walmart store.

In response, Walmart argues that, even though Webb Candy was not a party to a Supplier
Agreement, Webb Candy is nevertheless bound by the Supplier Agreements signed by Little i
and LSM because its claims are closely related to those contracts.  And Walmart offers three
theories for why the Little i and LSM contracts apply to the deliveries made by Webb Candy long
after those contracts expired:  First, Walmart argues that its Supplier Agreements last forever —
that is, they apply to any sale that a vendor ever makes to Walmart, even if that sale occurs
decades after the vendor's Supplier Agreement expired.  Second, Walmart argues that, by
continuing to do business with Walmart after their respective Supplier Agreements expired,
Little i and LSM waived the agreement's expiration date through course of performance.  Finally,
Walmart argues that, by continuing to do business with Walmart after their Supplier Agreements

expired, Little i and LSM created a new contract that contained the same terms and conditions as the old contracts and that applied to the Webb Candy deliveries.

## II. ANALYSIS

### A. Standard of Review

Walmart has asked this Court to dismiss plaintiffs' complaint both for improper venue under Fed. R. Civ. P. 12(b)(3) and for failure to state a claim under Fed. R. Civ. P. 12(b)(6). There is a split of authority regarding whether a defendant seeking to dismiss a complaint based on a forum-selection clause should bring its motion under Rule 12(b)(3) or Rule 12(b)(6), and the Eighth Circuit does not appear to have taken a position. *See Rainforest Cafe, Inc. v. EklecCo, LLC*, 340 F.3d 544, 546 n.5 (8th Cir. 2003).

If Rule 12(b)(6) applies, then this Court can make quick work of Walmart's motion. In ruling on a Rule 12(b)(6) motion, a court may ordinarily consider only the pleadings and "materials that are necessarily embraced by the pleadings and exhibits attached to the complaint." *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n. 4 (8th Cir. 2003). Walmart bases its dismissal motion entirely on the forum-selection clause in the Supplier Agreement. But the Supplier Agreement is not mentioned or relied upon in plaintiffs' complaint. If this Court cannot look to the Supplier Agreement, then this Court must deny Walmart's motion to dismiss. Fortunately for Walmart, though, this Court agrees with the circuit courts[3] and district courts[4] that have held that

---

[3]*See, e.g.*, *Sucampo Pharms., Inc. v. Astellas Pharma, Inc.*, 471 F.3d 544, 548-50 (4th Cir. 2006); *Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285, 1289-90 (11th Cir. 1998); *Argueta v. Banco Mexicano*, 87 F.3d 320, 324 (9th Cir. 1996).

[4]*CFMOTO Powersports Inc. v. NNR Global Logistics USA, Inc.*, No. 09-2202 (JRT/JJK), 2009 WL 4730330 at *2 (D. Minn. Dec. 4, 2009); *Tockstein v. Spoeneman*, No. 4:07CV00020 ERW, 2007 WL 3352362, at *2 (E.D. Mo. Nov. 7, 2007).

a motion to dismiss on the basis of a forum-selection clause is properly brought as a motion to dismiss for improper venue under Rule 12(b)(3), and not as a motion to dismiss for failure to state a claim under Rule 12(b)(6) (or as a motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1)).

When moving to dismiss under Rule 12(b)(3), a defendant must demonstrate that the plaintiff's choice of venue is improper, generally by submitting affidavits or other evidence. 5B Wright, Miller & Cooper, *Federal Practice & Procedure: Civil 3d* § 1352 at 320 (3rd ed. 2004). Obviously, then, a court may consider matters beyond the pleadings when ruling on a Rule 12(b)(3) motion. *See, e.g., Doe 1 v. AOL LLC,* 552 F. 3d 1077, 1081 (9th Cir. 2009); *Sucampo Pharms., Inc. v. Astellas Pharma, Inc.,* 471 F.3d 544, 550 (4th Cir. 2006); *Pierce v. Shorty Small's of Branson Inc.,* 137 F.3d 1190, 1192 (10th Cir. 1998); *Home Ins. Co. v. Thomas Indus., Inc.,* 896 F.2d 1352, 1355 (11th Cir. 1990). In this case, the Court may consider, among other things, the Supplier Agreements on which Walmart relies.[5]

A court addressing a Rule 12(b)(3) motion "must draw all reasonable inferences in favor of the non-moving party and resolve all factual conflicts in favor of the non-moving party." *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1138 (9th Cir. 2004). "[I]f the facts asserted by the non-moving party are sufficient to preclude enforcement of the forum selection clause, the non-moving party is entitled to remain in the forum it chose for suit unless and until the district court has resolved any material factual issues that are in genuine dispute." *Id.* at 1139. Because

---

[5]Walmart filed complete copies of the Little i and LSM Supplier Agreements under seal with its reply brief [Docket No. 17-1], and plaintiffs have not disputed the authenticity of those documents.

Rule 12(b)(3) motions are often filed before the factual record is developed, "in many cases the non-moving party will survive the Rule 12(b)(3) motion." *Id.*

### B. Motion to Dismiss or Transfer Under Forum-Selection Clause

Courts generally enforce forum-selection clauses unless the clauses are unreasonable. *See M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972). When an action subject to a forum-selection clause is initiated in a forum other than that which was contemplated by agreement, dismissal is appropriate. *See, e.g., M.B. Restaurants, Inc. v. CKE Restaurants, Inc.*, 183 F.3d 750, 753 (8th Cir. 1999); *Hauenstein & Bernmeister, Inc. v. Met-Fab Indus., Inc.*, 320 N.W.2d 886, 889 (Minn. 1982).

The Court agrees with Walmart that, if the Little i or LSM Supplier Agreements had not expired before Webb Candy delivered its merchandise to Walmart stores, this action would have to be litigated in Arkansas pursuant to the forum-selection clause. LSM, of course, would be bound by its Supplier Agreement. And although Webb Candy was not a signatory to either the Little i or LSM agreements, the Eighth Circuit has made clear that a nonparty to an agreement containing a forum-selection clause can be bound by that clause when the nonparty is "closely related to the dispute[] arising out of the agreement[]." *Marano-Enterprises of Kansas v. Z-Teca Restaurants*, 254 F.3d 753, 757 (8th Cir. 2001) (internal citations omitted). Webb Candy could hardly be more "closely related" to the deliveries that are the subject matter of this dispute. Webb Candy *made* those deliveries — and it was able to do so only because it rented Little i's vendor-identification number and then entered a joint venture with LSM. Complaint at ¶ 13. If, then, the Supplier Agreements had not expired before Webb Candy delivered merchandise to

Walmart stores, this Court would readily hold that Webb Candy was bound by the forum-selection clause in the agreements.

Unfortunately for Walmart, though, both the Little i and LSM Supplier Agreements did expire long before Webb Candy delivered any products to any Walmart store. On first glance, then, it is hard to imagine how Webb Candy could be bound by a forum-selection clause contained in agreements that had expired months before Webb Candy even approached a Walmart store or considered leasing a vendor-identification number.

As described above, Walmart makes three arguments that the forum-selection clause does indeed apply to the Webb Candy sales. The Court will address each argument in turn.

### 1. The Evergreen Clause

Walmart first argues, albeit halfheartedly, that the forum-selection clause — and necessarily the rest of the Supplier Agreement — never expire. In other words, Walmart contends that its Supplier Agreement is eternal and applies to all sales ever made to a Walmart store by the vendor, even if those sales are made decades after the Supplier Agreement expired. In support of this implausible argument, Walmart points to the opening paragraph of the Supplier Agreement, which provides that the contract:

> sets forth . . . the general terms of the business relationship between Company and Supplier. The parties agree that all sales and deliveries of all Merchandise . . . and all Orders . . . will be covered by and subject to the terms of this Agreement. . . . This Agreement becomes effective on the date shown above and remains effective for the term set forth herein.

Supplier Agreement at 1. Walmart seizes on the reference to "*all* sales and deliveries of *all* Merchandise" and "*all* Orders" to argue that the forum-selection clause governs even sales,

deliveries, and orders that are made many years after the Supplier Agreement expires. In making this argument, Walmart focuses on the forum-selection clause, but its argument, if correct, would necessarily apply to the remainder of the Supplier Agreement.

The obvious problem with Walmart's argument is that the Supplier Agreement *contains an expiration clause*. In the first paragraph of the Supplier Agreement — the same paragraph on which Walmart relies — the agreement unambiguously provides that it "remains effective for the [one-year] term set forth herein." *Id*. Likewise, the Supplier Agreement provides in paragraph 27 that it lasts for only one year and further that the contract may not be extended beyond that one-year term except by a writing signed by both parties. Supplier Agreement at ¶ 27. The limited duration of the Supplier Agreement is again emphasized in paragraph 29, which warns the vendor that the vendor should "never . . . assume that this Agreement will be renewed or extended" and emphasizes again that the agreement can be extended beyond one year only "in a writing signed by an authorized officer of [Walmart]." Supplier Agreement at ¶ 29.

When interpreting contracts, a court must, to the extent possible, give effect to every provision. *See, e.g., Boat Dealers' Alliance, Inc. v. Outboard Marine Corp.*, 182 F.3d 619, 621 (8th Cir. 1999). If, as Walmart contends, the Supplier Agreement is meant to last into eternity, then many of its clauses would be rendered useless, including the clauses providing that the agreement expires in one year, and the clauses providing that the agreement cannot be extended past one year except by a written instrument signed by both parties. Walmart's reading of the contract is entirely implausible.

Indeed, Walmart's reading of the contract is rejected by the other clause on which Walmart relies: the survival clause, which provides that "[t]he provisions of this Agreement

-11-

which by their nature are intended to survive the termination of this Agreement (including . . . forum selection . . .) shall survive its termination." Supplier Agreement at ¶ 29. If the entire agreement lasted forever, then there would be no reason for any survival clause. Moreover, this survival clause makes clear that only *some* provisions of the Supplier Agreement extend beyond the agreement's expiration, which cannot be reconciled with Walmart's suggestion that *all* provisions of the agreement are eternal.

Citing the survival clause, Walmart argues that, even if the entire agreement does not last forever, then at least "[t]he provisions of this Agreement which by their nature are intended to survive the termination of this Agreement (including . . . forum selection . . .)" last forever. But Walmart's argument begs the question of which provisions "are intended to survive" and which transactions those surviving provisions are intended to apply to. As Walmart would have it, the forum-selection clause and certain unspecified other clauses (Walmart is unable to identify those clauses) would apply not just to transactions made while the agreement was still in effect, but to transactions made years, decades, or even centuries after the agreement expired. It seems highly unlikely that Walmart and a vendor would enter into such an agreement — at least without being much clearer that some provisions of the contract would apply to sales made many years after the contract expired. More importantly, Walmart's reading of the Supplier Agreement cannot be reconciled with the agreement's repeated and emphatic statements that it will expire in one year and that it cannot be extended except by a formal, signed document.

A much more plausible reading of the survival clause is apparent — a reading that not only makes sense from a business perspective, but gives effect to every word of the Supplier Agreement. Under this reading, certain provisions of the agreement continue to apply after the

agreement expires, but only to merchandise that was delivered while the agreement was still in effect. Such a provision would make sense for both parties. Suppose that a vendor delivered merchandise to Walmart under a Supplier Agreement and that agreement expired the following day. If, a few weeks later, a dispute arose regarding that merchandise or Walmart's obligation to pay for that merchandise, it would be natural for the parties to look to the Supplier Agreement that applied when the merchandise was delivered. If, for example, a Walmart customer who was injured by the merchandise brought suit against Walmart, Walmart would naturally assume that it was protected by the indemnification provisions in the Supplier Agreement. Supplier Agreement at ¶ 14. It is eminently reasonable for the Supplier Agreement to provide that terms that applied at the time merchandise was delivered would continue to apply to that merchandise after the contract expires. This is the only sensible way to understand the survival clause's reference to "provisions of this Agreement which by their nature are intended to survive the termination of this Agreement."

The Court therefore rejects Walmart's contention that, under the terms of the Supplier Agreement, the forum-selection clause applies to sales of merchandise made long after the agreement expires. The Court holds instead that, although the forum-selection clause does indeed survive the expiration of the Supplier Agreement, it does so only with respect to transactions that occurred before the agreement expired.

## 2. Waiver

Walmart next argues that the Little i and LSM Supplier Agreements never expired because the vendors and Walmart extended the agreements by their course of performance. According to Walmart, when Walmart stores continued to place orders under the Little i and LSM agreements, and those orders continued to be filled by Little i and LSM (through Webb Candy, their business partner), Walmart and the vendors waived the requirement in the Supplier Agreement that any extension of the one-year term be made in a writing signed by a Walmart officer and the vendor.

Under § 2-209(4) of the Uniform Commercial Code, parties may waive terms of a written contract by their course of performance, even when the contract requires all modifications to be in writing. *Nutrisoya Foods, Inc. v. Sunrich, LLC*, 626 F. Supp. 2d 985, 990 (D. Minn. 2009). This exception is narrow, however, and any waiver under § 2-209(4) must satisfy the common-law requirements for waiver. *Valspar Refinish, Inc. v. Gaylord's, Inc.*, 764 N.W.2d 359, 367 (Minn. 2009). Both Minnesota and Arkansas courts define waiver as the intentional, voluntary relinquishment of a known legal right. *Bio-Tech Pharmacal, Inc. v. Int'l Bus. Connections, LLC*, 184 S.W.3d 447, 452 (Ark. Ct. App. 2004); *Valspar*, 764 N.W.2d at 367 (Minn. 2009).

Whether a waiver occurred is ordinarily a fact issue, and the intention to waive "is rarely to be inferred as a matter of law." *Farnum v. Peterson-Biddick Co.*, 234 N.W. 646, 647 (Minn. 1931); *see also Moore Ford Co. v. Smith*, 604 S.W.2d 943, 946 (Ark. 1980). Under the circumstances of this case, the Court cannot hold, as a matter of law, that Little i and LSM waived their right not to be bound by their respective Supplier Agreements after those agreements expired.

First, the Supplier Agreement specifically assured Little i and LSM that Walmart "will never assume that you . . . will be willing to extend or renew this Agreement . . . ." Supplier Agreement ¶ 29. Second, the Supplier Agreement repeatedly assured Little i and LSM that nothing about the agreement could be changed — including the expiration date — except in "a writing" that was "executed by both parties." *Id.* Third, this is not a case in which a vendor who was making regular deliveries under a Supplier Agreement continued to make those deliveries after the Supplier Agreement expired. Rather, there is no evidence that Little i made any deliveries after its contract expired in July 2007 and before Webb Candy began selling under its vendor-identification number in the fall of 2008, and there is no evidence that LSM made any deliveries after its contract expired in December 2006 and before Webb Candy began selling under its vendor-identification number in November 2008. With respect to both Little i and LSM, then, there was a significant gap between the expiration of the Supplier Agreement and the resumption of deliveries to Walmart stores. Finally, when deliveries resumed under the Supplier Agreement, Little i and LSM were not the ones doing the delivering; rather, Webb Candy was making deliveries, having purchased the right to use the vendor-identification number of Little i and then LSM.

Accepting plaintiffs' assertions of fact as true and taking all factual inferences in their favor, the Court cannot find, as a matter of law, and based on this scant factual record, that Little i and LSM intentionally relinquished their right not to be bound by their respective Supplier Agreements after those agreements expired.

### 3. Creation of a New Contract

Finally, Walmart argues that by continuing to do business after the Supplier Agreement expired, Walmart and the vendors created new implied-in-fact contracts identical to the original Supplier Agreements. As Walmart would have it, the forum-selection clause of the original agreements became part of the new agreements and now requires that this action be dismissed or transferred to Arkansas.

It is true that when parties continue to perform under an expired contract, their conduct can give rise to a new, implied-in-fact contract. *See Steed v. Busby*, 593 S.W.2d 34, 38 (Ark. 1980); *Bolander v. Bolander*, 703 N.W.2d 529, 542 (Minn. App. 2005). But the fact that parties to an expired contract continue to deal with one another does not mean that they *necessarily* create a new contract — or, if they do, that every term of the expired contract becomes part of the new contract. *Twitchell v. Town of Pittsford*, 483 N.Y.S.2d 524, 525 (N.Y. App. Div. 1984), *aff'd* 66 N.Y.2d 824 (N.Y. 1985). The presumption of a new, implied-in-fact contract may be rebutted with evidence that the parties did not intend to create a new contractual relationship or did not intend to be bound by certain terms of the expired contract. *Comenos v. Viacom Int'l, Inc.*, 857 F. Supp. 1160, 1165 (E.D. Mich. 1994).

A review of the case law reveals that courts typically find that new, implied-in-fact contracts have been created only when the conduct of the parties satisfies two conditions:

First, the performance that allegedly gives rise to the new contract must flow continuously from the performance that took place under the original contract. For example, a vendor that delivered 500 hard drives to a computer manufacturer every Monday for several months under an expired contract and who, without a break, continues to deliver 500 hard drives

to the same manufacturer every Monday after the contract expires (and to be paid for those deliveries) has a good argument that an implied-in-fact contract has been created. *See Fischer v. Pinske*, 243 N.W.2d 733 (Minn. 1976) (continuous employment for several years after expiration of original written contract gives rise to new employment contract); *Cloverdale Equip. Co. v. Manitowoc Eng'g Co.*, 964 F. Supp. 1152 (E.D. Mich. 1997) (continuous performance under distribution agreement gives rise to new distribution agreement); *Montgomery County Maryland v. Metromedia Fiber Network, Inc.*, 326 B.R. 483 (S.D.N.Y. 2005), *vacated and remanded by joint motion*, No. 05-4123-bk (2d Cir. Aug. 31, 2006) (continuous use of utility right-of-way following expiration of franchise agreement gave rise to new agreement requiring franchisee to continue making payments).

Second, the parties' performance must be substantially unchanged following the contract's expiration. *See Martin v. Campanaro*, 156 F.2d 127, 129 (2d Cir. 1946) (new contract is created "if, without more, the parties continue to perform *as theretofore*") (emphasis added). Suppose, for example, that a vendor delivered 500 hard drives to a computer manufacturer every Monday for several months under an expired contract. After the contract expired, however, the manufacturer did not place any orders for over a year — and then placed orders only sporadically (not weekly), and for keyboards (not hard drives). It would be difficult for the vendor to establish that an implied-in-fact contract had been created.

Even when these two conditions are met, courts will nevertheless decline to find that an implied-in-fact contract was created when other circumstances indicate that one or more of the parties did not intend to be bound by the terms of the expired contract. For example, in *Sevel Argentine, SA v. General Motors Corp.*, the court found that in spite of the parties' continuing to

perform following expiration of a contract, no new contract had been created when the parties had tried unsuccessfully to negotiate a contract renewal and the expired contract contained four separate provisions stating that the contract would not be extended unless by a signed writing. 46 F. Supp. 2d 261, 268 (S.D.N.Y. 1999). Other factors that cut against the creation of a new contract are a failure by either side to adhere to the terms of the expired contract, *Jurrens v. Lorenz Mfg. Co. of Benson Minn.*, 578 N.W.2d 151, 154 (S.D. 1998), and correspondence indicating that the business relationship has changed notwithstanding continued performance. *Computerized Med. Imaging Equip. v. Diasonics Ultrasound, Inc.*, 758 N.Y.S.2d 228, 230 (N.Y. App. Div. 2003).

Even when subsequent conduct does give rise to a new, implied-in-fact contract, courts will not assume that the new contract includes every term that appeared in the expired contract. Rather, in deciding whether a particular term is part of the new contract, courts will examine evidence that the parties did or did not intend to carry forward that term. *N.Y. Tel. Co. v. Jamestown Tel. Corp.*, 282 N.Y. 365, 371 (1940). Ultimately, in deciding whether any implied-in-fact contract has been created — and, if so, what terms are included in that new contract — "[t]he test remains whether there was a meeting of the minds, as is always the case in determining the existence of any contract." *Local Union 813, Int'l Bhd. of Teamsters v. Waste Mgmt. of N.Y.*, 469 F. Supp. 2d 80, 85 (E.D.N.Y. 2007).

In this case, accepting plaintiffs' assertions of fact as true and taking all factual inferences in their favor, the Court cannot find, as a matter of law, that Walmart and the vendors created implied-in-fact contracts after the Supplier Agreements expired. This is true for several reasons:

First, this is not a case in which the performance that took place after expiration of a written agreement flowed continuously from the performance that took place before expiration of that agreement. To the contrary, after expiration of the Little i and LSM Supplier Agreements — each of which lasted only one year — more than a year passed before Little i or LSM resumed making deliveries to Walmart stores.

Second, the record does not allow this Court to find that the parties' performance after expiration of the Supplier Agreements was substantially unchanged. In fact, the record contains no evidence about what deliveries Little i or LSM made under their respective agreements. There is reason to believe, though, that the post-expiration sales may have differed markedly from the pre-expiration sales. The post-expiration sales were made by *Webb Candy* directly to individual Walmart stores (as Walmart was made aware), while the pre-expiration sales were presumably made by Little i and LSM to Walmart.

Finally, there is also reason to believe that neither Little i nor LSM intended to create new implied-in-fact contracts with Walmart when they allowed Webb Candy to use their vendor-identification numbers. Again, the Supplier Agreement specifically assured Little i and LSM that Walmart "will never assume that you . . . will be willing to extend or renew this Agreement . . . ," and repeatedly assured them that the agreement could not be renewed except in a writing that was signed by both Walmart and the vendor. Suppler Agreement ¶ 29.

In light of the sizeable gap between the contracts' expiration dates and the Webb Candy deliveries, the paucity of evidence about the parties' course of performance before and after expiration, and the contract's specific, repeated assurances that renewal would require a written agreement, the Court cannot now hold, as a matter of law, that the parties intended to create a

new, implied-in-fact contract. Moreover, even if it were clear that the parties did intend to create a new contract, the Court could not now hold, as a matter of law, that they intended the forum-selection clause to carry forward into that new contract. Walmart's motion to dismiss is therefore denied.

### B. Motion to Transfer Under § 1404(a)

Walmart also moves to transfer this case to the United States District Court for the Western District of Arkansas pursuant to 28 U.S.C. § 1404(a). Under § 1404(a), a court may transfer a civil action to another federal district "[f]or the convenience of parties and witnesses" and "in the interest of justice." A plaintiff's choice of forum is entitled to "considerable deference," and a party seeking transfer under § 1404(a) bears the burden of establishing that a transfer is warranted. *See Terra Int'l, Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 695 (8th Cir. 1997). Walmart has not come close to meeting its burden.

First, Walmart has not shown that Arkansas is more convenient for the parties. Arkansas would be more convenient for Walmart, which is headquartered there, but it would not be more convenient for Webb Candy, which is headquartered here. "'Merely shifting the inconvenience from one side to the other . . . obviously is not a permissible justification for a change of venue.'" *Id.* at 119 F.3d at 696-97 (quoting *Scheidt v. Klein*, 956 F.2d 963, 966 (10th Cir.1992)).

Second, Walmart has not shown that Arkansas would be more convenient for potential witnesses. It is difficult for the Court to determine who is likely to be called to testify at trial, because Walmart and Webb Candy have not explained what they are fighting about. Walmart and Webb Candy seem to agree that Walmart must pay for merchandise that Webb Candy delivered or return that merchandise to Webb Candy. Presumably, then, the parties dispute what

was delivered by Webb Candy and whether Webb Candy has already been paid for that merchandise. If the Court's presumption is correct, then the most important witnesses would appear to be employees of Webb Candy — people who live and work in Minnesota. Affidavit of Alan Webb at 1. Arkansas would obviously not be convenient for them.

Finally, Walmart has not suggested any reason why transferring this action to Arkansas would serve the interests of justice, except that Walmart argues that a transfer would give effect to the forum-selection clause in the Supplier Agreement. As this Court has already held, however, there is substantial reason to doubt that the Supplier Agreement applies to this action.

For all of these reasons, the Court denies Walmart's motion to transfer under § 1404(a).

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT defendant Walmart Stores, Inc.'s Amended Motion to Dismiss or, in the Alternative, to Transfer Venue [Docket No. 7] is DENIED.


Dated: June 7, 2010                     s/Patrick J. Schiltz
                                        Patrick J. Schiltz
                                        United States District Judge