## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Webb Candy, Inc. and
Licensed Sports Marketing, LLC,

        Plaintiffs,

v.

Walmart Stores, Inc.,

        Defendant.

Case No.: 09-CV-02056-PJS-JJK

Case Type: Civil

**PLAINTIFFS' REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

---

## INTRODUCTION

Walmart does not dispute that its store managers were authorized to order the products at issue here. Plaintiffs presented evidence of those orders, of the fact that it has shipped product in response to those orders, and that Walmart has not paid for that product. Walmart has not presented facts to dispute the amount it owes Plaintiffs. Walmart also ratified any alleged fraud by accepting the benefits from the sales between the parties. Plaintiffs' motion for partial summary judgment should therefore be granted.

## FACTS

Defendant's Responsive Memorandum contains a "Statement of Facts" that contains inaccuracies.[1]

---

[1] Plaintiffs will address each of Defendant's Statement of Facts in its Memorandum in Opposition to Plaintiff's Motion for Summary Judgment (ECF: 50) as they are numbered in Walmart's Memorandum.

1.  Plaintiffs previously offered testimony from several witnesses that described the meetings with the Apple Valley Walmart store manager, Luke. (ECF: 40 at 4). This is admissible evidence based on the actual experiences of those present at the meetings with the store managers. Walmart did not offer an affidavit from the Apple Valley store manager or any other store manager to dispute the accuracy of Plaintiffs' testimony.

The testimony Walmart uses in its attempt to contradict Plaintiffs' statements in this section apply specifically to the "National Supplier Program or the Local Purchase Program."[2] Plaintiffs were selling to Walmart under the "70-type" program, and therefore, the National Supplier Program or Local Purchase Program requirements were not applicable. Walmart's own document details the process for using the "70-type" program. (ECF: 46 at 2-5). Walmart does not dispute its own testimony that the store managers are authorized to purchase product. (ECF: 46 at 2).

2.  Walmart attempts to minimize its own "70-type" process by citing testimony from its buyer, Seth Malley, and its supplier development manager, Kim Carter. Kim Carter testified that she is not an expert on 70-typing, she has never worked at the store level, and she does not "know how that system particularly works." (Carter depo. 22:21-23:6; Aff. of SM Exh. 2).[3] Seth Malley testified that he is not aware of Walmart's manual on the specific procedures for a 70-type purchase. (Malley depo.

---

[2] Walmart was careful to qualify its testimony as relating to either the "National Supplier Program or the Local Purchase Program." (ECF: 50 at 2-3).
[3] All deposition testimony and exhibits cited are attached to the Affidavit of Steven Moore ("Aff. of SM").

2

17:17-22; Aff. of SM Exh. 1).  He was unaware how the store managers were using this buying process.  Plaintiffs, however have previously provided a document from Walmart University that shows how a store can "70-type" an item when a store wants to *purchase* an item on a local level.[4]  (ECF: 48-3 at 11-21).

3. Alan Webb testified that no invoices were generated or product shipped unless a manager or co-manager placed the order with Plaintiffs.  (ECF: 41).  Paul Henson, Webb Candy's Sales Manager, also sent an email to Walmart stating Webb Candy did not intentionally send a single item to Walmart that had not been authorized by a manager.  (ECF: 43-5 at 8).  Again, Walmart fails to obtain affidavits or any testimony from its store managers to dispute this testimony that the orders were placed.

Walmart cites Alan Webb's testimony regarding Walmart returning product it did not order, but Walmart has taken his testimony out of context.  Alan Webb testified as follows:

> Q: Some Walmart stores were returning things because they said that they were never ordered, never authorized?
>
> A: Yes. You know, they either dealt with – my salespeople either dealt with certain co-buyers or co-managers, and the co-managers would basically order the goods, and they shouldn't have ordered the goods without the manager's authorization.  So the product comes in and the manger says, 'What is this?'  And the co-manager says, 'I don't know. I didn't order it,' to protect their jobs.  That happens all the time with other retailers too…

(Webb depo. 60:15-61:7; Aff. of SM Exh. 4).

---

[4] The Walmart University document also states, "store level agreements have led to lawsuits because the store changed its mind, and Walmart was found liable to pay damages to supplier." (ECF: 40 at 5).

Alan Webb testified that Webb Candy accepted returns from stores that said they never authorized the product not because Webb Candy agreed that they were not authorized, but because Webb Candy did not want to "burn our bridges with Walmart for a few orders." (ECF: 48-4 at 19; 113:9-12). Furthermore, out of the over 900 individual stores that Plaintiffs sold product to only three called Walmart's corporate offices to complain of receiving product it did not order. (ECF: 46 at 10, footnote 8).

Walmart's statement at bullet point 3 under paragraph 3 states that Webb Candy attempted to sell products to Walmart stores even after Walmart told Webb Candy to stop, but the record does not support this statement. Mr. Malley testified he did not tell Plaintiffs to quit selling to Walmart stores until early to mid February 2009. (ECF: 43-2 at 16; 64:2-64:24). The email Mr. Malley was referring to in the cited testimony is dated February 6, 2009. (Webb depo. Exh. 32; Aff. of SM Exh. 4). Webb Candy's last invoice is dated February 6, 2009. (Webb depo. Exh. 22, Bates No.: 100031; Aff. of SM Exh. 4). Walmart also refers to a store manager being upset because Richard Twistol, an employee of Webb Candy, was calling the store, but Walmart's own documents show those phone calls took place in January of 2009, *before* Walmart told Plaintiffs to quit selling to its stores. (WAL000256-259; Aff. of SM Exh. 7).

4. Plaintiffs reassert that they told Walmart in November of 2008 that Webb Company was working with Little i. (ECF: 40 at 4-5). The specific fee arrangement between Webb Candy and Little i is none of Walmart's business and neither Little i nor

Webb Candy was under an obligation to share that information with Walmart.[5] The November 2008 email does not suggest Little i was "making sales" as Walmart claims. Instead, Alan Webb stated in the email, "We are doing the manufacturing *and the sales* to each store and Isaac is *helping* with the sales part of the organization." (ECF: 43-2 at 22, emphasis added).

Plaintiffs have identified eleven different facts that show Walmart had actual notice Webb Candy was supplying the goods. (ECF: 46 at 6-10). These facts include specific facts that show the individual Walmart stores had actual notice (the label on the product itself provided this notice) as well as Walmart corporate offices. Walmart offers no citations to support its statement that the individual stores had no knowledge of Webb Candy's involvement, and cites no specific facts that the stores were ever deceived into dealing with Webb Candy.

5. Alan Webb testified that stores called to reorder product from Plaintiffs. (ECF: 48-4 at 13-14; 85:22-86:19). One store that reordered from Plaintiffs (store number 1371) issued a check directly to Webb Candy for the reorder. (ECF: 47-4). Tom Esterley, a Webb Candy salesperson, testified the Apple Valley, Minnesota store reordered product and that other stores called him directly to reorder. (Esterley depo. 7:10-8:1; Aff. of SM Exh. 3; ECF: 48-7 at 4; 23:1-20).

---

[5] The manner in which LSM sold to Walmart in the past with no objection is in reality no different than they way it sold to Walmart in the present situation through Webb Candy. (ECF: 46 at 23-24). The only difference is the financial arrangement between LSM and Webb Candy, which should be of no concern to Walmart.

5

6. Plaintiffs did not imply some "unidentified" person in Walmart's home office pre-approved sales made by Plaintiffs as Walmart suggests. Walmart's cite to Paul Henson's testimony is incomplete. (ECF: 43-5 at 4). Mr. Henson testified that he spoke to <u>Seth Malley</u>, a buyer at Walmart, regarding the products not going through Walmart's headquarters, but that Mr. Malley said that they are local products that are purchased at the local level by the store. (<u>Id.</u>). Again, Defendant fails to offer any testimony or affidavits to dispute Mr. Henson's testimony about his conversations with Mr. Malley.

Plaintiffs were selling to individual Walmart stores under Walmart's "70-type" program as explained to Plaintiffs by Walmart's store managers. (ECF: 46 at 2-5). This was the procedure that was explained to Plaintiffs by Walmart employees with authority to purchase product as to how to sell local high school imprint items to the individual stores. Walmart store managers have the authority to purchase these types of products and Plaintiffs have presented evidence of the orders of local high school imprint products. Walmart has not cited to specific facts that would rebut the existence of the orders.

7. Paragraph 7 to Walmart's Response is fully argued at ECF: 46 at 13-14; <u>see also</u> <u>infra</u> p. 13-15.[6] Additionally, Walmart's statement at bullet point three under this paragraph regarding Little i is not supported by any evidence in the record.

8. Paragraph 8, bullet point one to Walmart's Response is fully argued at ECF: 46 at 13-14; <u>see</u> <u>also</u> <u>infra</u> p. 13-15. Additionally, Walmart's statement at bullet

---

[6] Walmart argues that Alan Webb does not know how much is owed. The accounting person at Webb Candy is Carol Rautio and she testified as to what is owed. (ECF: 43-6 at 7; 73:13-74:21).

6

point two under this paragraph attempting to refute the $152,507.71 it shows by its own document is owed is not supported by any evidence in the record.

Walmart argues that there is no evidence supporting any sales contracts between the parties. Plaintiffs previously stated in their Memorandum of Law in Support of Motion for Summary Judgment that the evidence of the contracts between Plaintiffs and Walmart consists of the orders and the invoices. (ECF: 40 at 2-4). Plaintiffs filed a summary created by Webb Candy as evidence of each order from Walmart and each invoice in question. (ECF: 48-6 at 2-52; Bates Numbers 102786-102835). The summary contains the order number and the invoice number. This document was assembled from the actual underlying orders between Walmart and Plaintiffs and the corresponding invoice, and is a summary of those transactions. (Rautio depo. 34:3-36:21; 45:8-46:12; Exh. 36; 104801; Aff. of SM Exh. 5). An example of an underlying order was previously provided as evidence. (ECF: 41-1). Webb Candy's order process includes the memorialization of an order based on an order form completed by each salesperson in response to an order from the customer from which an invoice is generated. (Rautio depo. 34:3-36:21; 45:8-46:12; Exh. 36; 104801; Aff. of SM Exh. 5).

The underlying order forms and invoices used in creating the summary are contained in three large banker boxes and were made available to Defendant for review. (Aff. of SM ¶ 2). The underlying support for the summary created by Webb Candy contains an order form that details the customer information (contact name, contact phone number, order cost, date of order, purchase order number, school names and colors, billing address, salesperson) and the corresponding invoice. (ECF: 41-1).

Plaintiffs' salespeople testified they would secure the order with the store and fill out an order form, and then the order would be processed through Plaintiffs' ordering system. (Jacobs 13:14-16:20; Aff. of SM Exh. 6; Esterley depo. 19:22-21:12; Aff. of SM Exh. 3).

Plaintiffs have filed the summary of the orders created at the point of sale with the individual Walmart retail stores and the corresponding invoice in support of its motion for summary judgment. This summary is admissible evidence. Plaintiffs are not required to submit hundreds of individual order forms and invoices to the Court. See C.L. Maddox Inc. v. The Benham Group, Inc., 88 F.3d 592, 601 (8th Cir. 1996) and Rule 1006 of the Federal Rules of Evidence. Bills and summary listings may be acceptable evidence even without the inclusion of underlying support. Theissen-Nonnemacher v. Dutt, 393 N.W.2d 397, 400 (Minn. 1986). The summaries provided by Plaintiffs are admissible evidence of the orders and invoices, and Walmart has failed to rebut that evidence.

Plaintiffs also produced to Defendants another summary of all unpaid invoices. (Webb depo. Exh. 22; Aff. of SM Exh. 4). Carol Rautio testified that this document is a summary of orders and invoices that Walmart has not paid. (Rautio depo. 79:16-20; Aff. of SM Exh. 5). The summary shows Walmart owing $650,043.13. Ms. Rautio explained that she deducted the discrepancy of $225,697.84 between what Walmart shows it paid Little i and what Plaintiffs show Little i paid Webb Candy. (ECF: 43-6 at 6; 71:9-72:2). Plaintiffs have reduced the $650,043.13 amount on the summary by the $225,697.84 discrepancy to arrive at the $424,345.29 claimed in their summary judgment motion. (See also ECF: 40, footnote 2).

In its Rule 30(b)(6) deposition notice, Plaintiffs sought the following information from Defendants in order to discover any rebuttal testimony from Walmart specific to the summary of orders, payments, and invoices produced by Plaintiffs:

> 6. All facts which Walmart has that show the summary of invoices prepared by Plaintiffs contained in Bates numbers 102786 through 102835 is not an accurate summary of the invoices made available by Plaintiffs to Walmart for the time period January 1, 2008 to date, showing all orders, shipments, payments and credits and the balance owed by Walmart to Plaintiffs as of February 17, 2010 in the amount of $650,043.13.

(ECF: 43-1).

Plaintiffs also asked for Defendants to produce a witness to testify as to "All facts which Walmart has that show $650,043.13 is not owed Plaintiffs at this time." (Id. at ¶7).

Defendants responded to these requests in December 2010 by stating that Walmart would not be producing a witness regarding topics 6 and 7 because it did not have a witness to testify on that topic. (ECF: 43 at ¶5).

Walmart has had every opportunity to dispute the accuracy of the summary and the underlying documentation containing the orders and invoices, but has failed to do so. The evidence submitted by Plaintiffs as to the orders from Walmart, the invoices sent and the amount owed is uncontroverted, and Plaintiffs are entitled to summary judgment.

## ARGUMENT

### I. **Walmart Ratified Any Alleged Fraud**

Walmart's first argument that the sales were voidable is a reargument of its summary judgment motion and Plaintiffs incorporate their responsive arguments filed on March 2, 2011. (See ECF: 46 at 14-21).

Walmart cannot overcome the fact that it ratified any fraud alleged to have been engaged in by Plaintiffs when it accepted the benefits of the sales relationship knowing that Webb Candy and LSM (and Little i earlier) were working together to sell the product. Ratification occurs when a party accepts and retains the benefit of any alleged fraud. Proulx v. Hirsch Bros. Inc., 155 N.W.2d 907, 912 (Minn. 1968).

The uncontroverted facts in this case show that Walmart knew that Webb Candy was the supplier of the products (the label of the product alone shows that) and that Webb Candy was working with Little i and LSM to sell the product. (ECF: 46 at 6-10). Walmart knew these facts and accepted the benefits and it cannot now argue that it is entitled to avoid paying for product it ordered. Walmart ratified any fraud that it claims was perpetrated by Plaintiffs, and it cannot void the sales as a result. See Shell Petroleum Co. v. Anderson, 253 N.W. 885 (Minn. 1934).

In order to overcome a motion for summary judgment, the nonmoving party must present specific facts that show a genuine issue of material fact exists. Iowa 80 Group Inc. v. Internal Revenue Service, 406 F.3d 950, 952 (8th Cir. 2005). Walmart has presented no evidence to controvert the fact that it knew about Webb Candy's involvement. The label on the product and the facts set forth by Plaintiffs in its Response announced Webb Candy's involvement to Walmart. (ECF: 46 at 7-10). Also, there is no testimony from any store manager that even suggests any store was deceived by Plaintiffs into ordering product. Walmart clearly knew of Webb Candy's involvement as early as October 2008, yet continued to reap the benefits until February 2009. This is a ratification of any "fraud." Shell Petroleum Co., 253 N.W. at 887.

## II. Walmart's "Mere Silence" Argument is Inapplicable

Walmart argues that Plaintiffs cannot establish a contract based on Walmart's "mere silence" after the invoice was sent. But those invoices were sent in response to orders placed by Walmart, and do not involve a situation where Plaintiffs shipped unsolicited goods, as Walmart argues.

Walmart claims that the sales at issue were simply an offer by Webb Candy to sell the goods to Walmart, but such an argument is not supported by the facts. The stores ordered the product. Plaintiffs provided the Court with a summary of all orders and invoices in support of its motion for summary judgment. (See ECF: 48-6 at 2-52; Bates Numbers 102786-102835). The backup documents for that summary of orders and invoices were made available to Walmart. (Aff. of SM ¶ 2). Those backup documents include the order forms evidencing the order placed by the Walmart stores. The summary provided by Plaintiffs is proof of the orders from Walmart and is admissible evidence of the orders placed and invoices sent. (See supra p. 7-8). Walmart's burden is to now demonstrate that facts exist to dispute Plaintiffs' evidence. See Iowa 80 Group, Inc., 406 F.3d at 952. It has not done so other than to cite to a complaint from one store manager to Walmart's fraud investigator. (Defendant's Response, ECF: 50 at 10-11).[7]

These sales were not "unsolicited" or based on "mere silence" as Walmart argues in its Response, but were based on specific orders from Walmart. When Plaintiffs sent the invoices with the product in response to the orders, those invoices constituted the

---

[7] Walmart does not even provide direct evidence from that store manager.

confirming memorandum under Minn. Stat. §336.2-207(2).[8] Plaintiffs have provided evidence of the orders placed by Walmart. If Walmart now disputes that it placed those orders, then it is Walmart's burden to cite to specific facts to support its position. See Iowa 80 Group, Inc., 406 F.3d at 952. It has not done so.

When Plaintiffs served its Rule 30(b)(6) notice on Walmart requesting that it produce a witness to testify as to any inaccuracies it believed were present in Plaintiffs' summary statement of orders placed, invoices sent and amount still owed by Walmart, Walmart represented that it had no witness to dispute the accuracy of Plaintiffs' summary. (See supra p. 9). If Walmart disputed any of those orders, that was its chance to do so, and its burden is to present specific facts to dispute Plaintiffs' evidence at this point. (See supra p. 9). It has not done so, and has not met its burden to defeat Plaintiffs' summary judgment motion.

Walmart's reliance on W.H. Barber Co. v. McNamara-Vivant Contracting Co., 293 N.W.2d 351, 355 (Minn. 1979) is misplaced. That case involved whether a price protection clause in an underlying agreement existed and whether the specific invoices demonstrated such a clause. The court found "[e]ach invoice merely evidenced a separate purchase and constituted a separate contract. Nothing in the invoices suggests that they were memoranda of an underlying sales contract." Id.[9]

---

[8] The cases cited by Walmart are not §336.2-207 cases, and are therefore not applicable.
[9] The court also found that the price quotation letters did not rise to the level of a contract because they were simply an invitation to enter into a bargain. Id. That is not the factual scenario in this case. Here, Walmart ordered the products and Plaintiffs filled those orders.

12

The goods shipped by Plaintiffs to Walmart were not "unsolicited" as Walmart argues. The goods were shipped and invoiced in response to orders from Walmart. Plaintiffs accepted those orders and shipped the goods, and Walmart should be ordered to pay for what it ordered and received. See Indus. Lumber and Plywood, Inc. v. Cherry Tree Cabinets, Inc., App. Unpub. LEXIS 52 at *5 ("each order and resulting invoice… constitutes a separate contract."); see also W.H. Barber Co., 293 N.W. 2d at 355 (each invoice evidenced a separate purchase and "constituted a separate contract.")

### III. Evidence of Nonpayment

Walmart argues that Plaintiffs have failed to provide evidence of what invoices were not paid, and that the statement Plaintiffs provided Walmart showing $650,043.13 owed was not accurate.[10] This is a misleading argument.

Plaintiffs moved for summary judgment in the amount of $424,345.29. The reason for that figure was because after reviewing the documents that Walmart provided in this litigation as to what it claims it paid, those documents showed that Walmart paid $225,697.84 to Little i that Little i did not forward to Webb Candy. (See supra p. 8-9). That $225,697.84 was subtracted from the $650,043.13 figure to arrive at the $424,345.29 amount owed by Walmart. What was "inaccurate" about the $650,043.13 figure was that the $225,697.84 needed to be subtracted from it, which it was to arrive at the summary judgment amount of $424,345.29.[11]

---

[10] The statement is at ECF: 48-6 at 2-58.
[11] Walmart has no evidence that the statement is not otherwise an accurate statement of the amount owed, and it has no witness to dispute the accuracy of the statement. (See supra p. 9).

Walmart argues that Plaintiffs at one point provided a "statement" dated October 16, 2009 but has "abandoned any reliance on that statement." This is not true. That statement (Webb depo. Exh. 22; Aff. of SM Exh. 4) contains the same information as the Customer History Report, (ECF: 48-6 at 2-52; Bates Numbers 102786-102835), although in a different form. (Rautio depo., ECF: 43-6 at 8; 117:3-14). The Customer History Report is more comprehensive and shows all transactions with Walmart, including products ordered, shipped, invoiced, payments from Walmart on invoices, and credit memos. The statement dated October 16, 2009 shows only those sales for which Walmart has not paid. Both documents show the $650,043.13 figure owed by Walmart. (Webb depo. Exh. 22; Aff. of SM Exh. 4; ECF: 48-6 at 2-52).

There is no dispute that Plaintiffs sold and shipped $1,822,941.32 to Walmart. (ECF: 46 at 13-14). There is also no dispute that Walmart paid $923,912.77 for the goods, returned $386,521.46, and that Walmart shows it has retained $362,404.00 of goods in its warehouses. That leaves $150,103.09 that Walmart unequivocally owes Plaintiffs;[12] and coupled with the $362,404.00 of product it still has in its warehouse, the total is $512,507.09 ($150,103.09 + $362,404.00). Plaintiffs moved for summary judgment for $424,345.29 because there are no fact issues as to that amount. Walmart's figures show that $512,507.09 is owed. The only "fact issue" is whether the amount owed by Walmart is $424,345.29 or $512,507.09.[13]

---

[12] Walmart's document shows it owes $152,507.71. (ECF: 46 at 14).
[13] Plaintiffs must prove damages to a reasonable degree of certainty, not with absolute certainty or mathematical precision. Richard Knutson, Inc. v. McCrossan Constr. Inc., 1994 Minn. App. Unpub. LEXIS 124, citing Bethesda Lutheran Church v. Twin City

14

**IV.	Rejection and Revocation are Not Available to Walmart**

Walmart argues that it was entitled to reject or revoke acceptance and that it did so within a reasonable time. For support, it asserts that it was not possible to know of Webb Candy's involvement upon receipt of the goods.

Walmart however, ignores the most basic fact in proffering this argument—that the labels on the products state that the products were distributed by Webb Candy. (See supra p. 5).[14] To argue that Webb Candy was involved in some "charade" to prevent the stores from knowing the products were made by Webb Candy (Walmart's Response ECF: 50 at 22) is to ignore the words on the label and all the other facts demonstrating that Walmart knew who it was dealing with (See Plaintiffs' Response, ECF: 46 at 7-10).[15] Walmart has presented no facts from any store even suggesting that it was deceived. It knew who it was dealing with based on the labels, and its corporate office knew in November 2008 of Webb Candy's involvement. There are simply no facts offered by Walmart that its store managers were somehow defrauded. Despite this knowledge,

---

Constr., 356 N.W.2d 344, 348 (Minn. 1984). Plaintiffs have proved damages to a reasonable degree of certainty. Walmart is in no position to dispute the reasonableness of the damages calculation in light of the fact that Walmart's figures show it owes more than Plaintiffs are claiming.

[14] The label also has the UPC number on it, so when Walmart argues that it did not know the "massive scope of Webb Candy's fraud until Webb Candy disclosed the UPC numbers it was using for the products on January 20, 2009," this is simply a fallacy. All Walmart had to do was look at the product label to see the UPC number and know of Webb Candy's involvement.

[15] Walmart also continues to claim that Webb Candy employees "posed" as Little i or LSM employees, but this claim is not supported by the record. (ECF: 46 at 6-7).

15

Walmart continued to order product and did not tell Plaintiffs to stop selling product until February 2009. (see ECF: 40 at 6-7).

Walmart was not entitled to either reject the goods or revoke its acceptance for the reasons previously stated by Plaintiffs (see ECF: 40 at 12-17). Walmart had no right to reject or revoke its acceptance, and even if it had such a right, it did not exercise that right within a reasonable time.[16]

Walmart states that Kim Carter told Webb Candy to get the products out of the stores. Plaintiffs do not dispute that Kim Carter told Mr. Webb to get his products out of the stores, but the issue is *when* did Ms. Carter tell Alan Webb to remove the products. Alan Webb testified that it was at the meeting at Walmart's headquarters when he was told to remove his products. (Webb depo. 93:23-94:9; Aff. of SM Exh. 4). This meeting took place in March 2009. (Malley depo. 22:12-23; Aff. of SM Exh. 1). There is no evidence to the contrary.

## V. Mitigation

The items that Walmart ordered and has not paid for are special order items, and to remove the labels and resell the items is cost prohibitive to Plaintiffs. (Webb depo. 39:8-42:16; Aff. of SM Exh. 4). Defendant has the burden of proving that Plaintiffs' damages could have been mitigated by "reasonable diligence." Lanesboro Produce and

---

[16] Walmart claims that "[o]nce Walmart found out that Webb Candy had sent its products to hundreds of individual Walmart stores by using the names and supplier numbers of Little i and LSM, Walmart put a stop to it." (Walmart's Response, ECF: 50 at 24). This statement is contrary to the facts. Walmart knew about Webb Candy's involvement in November 2008, and did not tell it to stop selling product to the stores until February 2009. (See supra p. 4). Walmart then told the stores if they wanted to they could return the product, but that was up to the stores. (see ECF: 46 at 12-13).

16

Hatchery Co. v. Forthun, 16 N.W. 2d 326, 328 (Minn. 1944). Walmart has presented no evidence to rebut Plaintiffs' evidence that it cannot reasonably mitigate its damages due to the cost of removing the labels. Therefore, Walmart cannot claim that a failure to mitigate relieves it from paying for the goods ordered and shipped.

## CONCLUSION

Walmart's store managers were authorized to order the products at issue here. Plaintiffs presented evidence of those orders and Walmart's failure to pay for the products it received. Walmart has not come forward with evidence to create a fact issue as to the accuracy of those orders or amount owed, and Plaintiffs are entitled to summary judgment.

**WATJE & MOORE, LTD.**

Dated: March 9, 2011.    _____
GALEN E. WATJE (#114790)
STEVEN MOORE (#252463)
smoore@watjelaw.com
7900 Xerxes Avenue South, Suite 2000
Minneapolis, Minnesota 55431
Telephone: (952) 646-9991
*Attorneys for Plaintiffs*